1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   REGINALD TERRY,              )   Case No. 06cv1669-BTM (BLM)
                                  )
12              Petitioner,       )   **REPORT AND RECOMMENDATION FOR**
     v.                           )   **ORDER GRANTING RESPONDENT'S**
13                                )   **MOTION TO DISMISS**
     R.K. WONG, Acting Warden; BILL )
14   LOCKYER, Attorney General of )   **[DOC. NO. 12]**
     the State of California,      )
15                                )
                Respondents.      )
16                                )
                                  )
17   _____ )

18       This Report and Recommendation is submitted to United States

19   District Judge Barry Ted Moskowitz pursuant to 28 U.S.C. § 636(b) and

20   Local Civil Rules 72.1(d) and HC.2 of the United States District Court

21   for the Southern District of California.

22       On August 11, 2006, Petitioner Reginald Terry, a state prisoner

23   appearing *pro se*, filed the Petition for Writ of Habeas Corpus currently

24   before the Court.  Doc. No. 1.  Petitioner challenges his multiple

25   robbery convictions, as well as his forty-one year, eight month prison

26   sentence.  Id.

27       This Court has considered the Petition (Pet.), Respondent's Motion

28   to Dismiss (Resp't Mem.), and all supporting documents submitted by the

parties.   For the reasons set forth below, this Court **RECOMMENDS** that Respondents' Motion to Dismiss be **GRANTED**.   Doc. No. 12.

### FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in <u>People v. Terry</u>, No. D037185 (Cal. Ct. App. May 15, 2002). Lodgment 3.   This Court presumes the state court's factual determina-tions to be correct absent clear and convincing evidence to the contrary.   28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); <u>see</u> <u>also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts are entitled to statutory presumption of correctness).

> Between November 1999 and January 2000, Terry robbed two motels, a gas station and a bank.  He had previously stayed at the motels and was recognized by the clerks/victims.  His fingerprints matched prints found at the scene of the gas station robbery.  He confessed to the bank robbery.  He was also convicted of twice robbing a bookstore.
>
> James Worley and Rod Baltau testified that on January 9, 2000, while Worley was ringing up a purchase by Baltau in a bookstore, Terry pointed a gun at Baltau and threatened him. Terry took money from Worley and fled.  Worley identified Terry from a black and white photograph and in court.  Baltau also identified Terry as the robber.
>
> Terry testified he is a career criminal but he only robs banks.  He admitted committing only a bank robbery.

<u>See</u> Opinion of the California Court of Appeal, Lodgment 3 at 2.

### PROCEDURAL BACKGROUND

The District Attorney of San Diego County filed an information charging Petitioner with eight counts of second degree robbery in violation of California Penal Code ("Penal Code") § 211 in connection with the above-described robberies.  Appellant's Opening Brief, Lodgment 1 at 1.   With regard to Counts Six through Eight, the information alleged that Petitioner personally used a firearm within the meaning of

2

Penal Code § 12022.53(b).  <u>Id.</u> at 1-2; Lodgment 3 at 1.

On June 2, 2000, a jury returned a guilty verdict on six counts of robbery in violation of Penal Code § 211, three while personally using a firearm.  Order of the California Court of Appeal, Lodgment 3 at 1; <u>see also</u> Lodgment 1 at 2 (jury acquitted Petitioner of Counts 1 and 2). In a bifurcated proceeding, Petitioner admitted that he had served four prior prison terms and had one prior serious felony conviction and one prior strike conviction.  Order of the California Court of Appeal, Lodgment 3 at 1-2.  On December 4, 2000, the trial court imposed a sentence of forty-one years and eight months, specifically,

> the 10-year upper term for one count of robbery with a prior strike conviction, enhanced 10 years for personal firearm use, and five years for the prior serious felony conviction, with consecutive terms of two years on five convictions of robbery with a prior strike conviction (double one-third the middle term), two enhanced by three years four months for personal firearm use (one-third the middle term).

<u>See</u> Appellant's Opening Brief at 3; <u>see also</u> Order of the California Court of Appeal at 2.  The trial court struck the prior prison term enhancements.  <u>Id.</u>

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One.  Appellant's Opening Brief, Lodgment 1.  On appeal, Petitioner alleged that there was insufficient evidence to support his convictions for the robberies of the F Street Bookstore (Counts Six and Seven), and as such, his convictions on those counts, together with the accompanying sentencing enhancements, should be reversed.  <u>Id.</u> at 11-18.  On May 15, 2002, the California Court of Appeal affirmed Petitioner's convictions in an unpublished opinion. Order of the California Court of Appeal, Lodgment 3.

Based on a review of the record presented to this Court, it appears

that Petitioner did not pursue further direct review.[1]   Pet. at 2.

Instead, on September 24, 2004,[2] Petitioner filed a petition for writ

of habeas corpus in the California Supreme Court.   Petition for Writ of

Habeas Corpus, No. S128155, Lodgment 8.   In support of his request for

state habeas relief, Petitioner alleged that the trial court committed

---

[1] In his federal habeas petition, Petitioner left blank the sections requesting information regarding further direct review.  See Pet. at 2-3.  In his initial state habeas petition, however, Petitioner indicated that he sought such review as early as July 24, 2002, but the "petition for review [was] mailed but not received by c[our]t." Lodgment 8 at 3-5; see also id. at Exs. D (attaching July 8, 2002 correspondence from Petitioner's appellate counsel providing guidance regarding how and when to file a petition for direct review in the California Supreme Court) and E (attaching prison legal mail log, which indicates that Petitioner sent legal mail to the California Supreme Court on July 24, 2002).  Petitioner's subsequent state habeas petitions reiterate these representations.  See Lodgment 4 at 5 (indicating Petitioner sought direct review in the California Supreme Court as of July 24, 2002 but petition was not received by court); Lodgment 6 at 5 (indicating direct review was sought and was then "pending").  Moreover, in response to Petitioner's May 29, 2003 inquiry regarding the status of his petition for direct review, the clerk confirmed that per the California Supreme Court's docket, no petition for review was ever filed.  See Lodgment 8 at Ex. F.  In any event, neither copies of a petition for direct review by the California Supreme Court nor a ruling related thereto were submitted to this Court.

[2] In determining the filing date of his petitions, Petitioner is entitled to the benefit of the "mailbox rule," which is the date the petitions were presented to prison authorities for mailing to the court.  See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that petitioner's notice of appeal is deemed "filed at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk"); Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) (recognizing the application of Houston's mailbox rule to federal habeas filings); see also Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (recognizing same with regard to state habeas petitions).  Here, Petitioner's initial state habeas petition bears a handwritten signature, verification, and typewritten date of September 24, 2004.  Lodgment 8 at 6, 10.  Accordingly, this Court will construe Petitioner's original state habeas petition as filed as of September 24, 2004.  Id.

4

reversible error by failing (1) to instruct the jury regarding appropriate eyewitness identification procedures, and (2) to respond to the jury's request for clarification after deliberations had begun. Id. at 5-9. Petitioner also alleged that he suffered from "grave mental illness" of varying degrees (ranging from "major depressive disorder, recurrent with severe psychotic features," "polysubstance dependency," and "anti-social personality disorder"), that he actively participated in the prison mental health care system at the Correctional Clinical Case Management System ("CCCMS") level of care, and that his condition rendered him incapable of understanding his legal remedies and "transacting court business." Id. at 3-4. In light of his alleged mental condition, Petitioner argued that he was entitled to tolling. Id.

Next, on October 11, 2004, Petitioner filed a petition for writ of habeas corpus in the California Superior Court. Petition for Writ of Habeas Corpus, No. HC17966, Lodgment 4. In this petition, however, Petitioner argued that the trial court improperly imposed an upper term maximum sentence without a jury determination as to aggravating factors in violation of his Sixth Amendment rights. Id. at 3-4 (citing Blakely v. Washington, 542 U.S. 296 (2004); Teague v. Lane, 489 U.S. 288 (1989)). The California Superior Court denied the petition in its entirety on February 23, 2005. Order Denying Petition for Writ of Habeas Corpus, Lodgment 5. Petitioner then sought collateral review in the California Court of Appeal on April 11, 2005, raising the same Blakley claim he presented to the lower court. Petition for Writ of Habeas Corpus, No. D046242, Lodgment 6. The California Court of Appeal denied the petition on May 20, 2005. Order of the California Court of Appeal, Lodgment 7 at 2 (underlining that "Blakely is not a watershed

1  rule of criminal procedure that must be applied retroactively to final

2  cases" such as Petitioner's).

3       On August 17, 2005, the California Supreme Court denied Peti-

4  tioner's habeas petition filed nearly one year before, citing In re

5  Dixon, 41 Cal. 2d 756 (Cal. 1953).   Docket (Register of Actions),

6  Lodgment 9 (recording denial of habeas petition).

7       On August 11, 2006,[3] Petitioner filed the instant Petition for Writ

8  of Habeas Corpus pursuant to 28 U.S.C. § 2254.   Doc. No. 1.   In his

9  federal habeas petition, Petitioner resurrects only the claims he

10  asserted in his habeas petition filed in the California Supreme Court,

11  namely, that the trial court's failures to instruct the jury with regard

12  to eyewitness identification and to respond to the jury's during-

13  deliberations request for clarification were improper.   Id. at 6-7.   In

14  addition, Petitioner asserts that he "is currently under a level of care

15  that requires close psychiatric monitoring and treatment" and that he

16  takes "potent psychotropic drugs."   Id. at 8, 14.

17       Respondent moved to dismiss on February 22, 2007, arguing that the

18  instant petition is barred by the statute of limitations set forth in

19  28 U.S.C. § 2244(d).[4]   Resp't Mem. at 3-5.   In support, Respondent

20  contends that the applicable limitations period expired before

21  Petitioner first sought collateral review in state court and long before

22  he filed his federal habeas petition.   Id. at 4.   Respondent also

23  contends that Petitioner is not entitled to the benefit of equitable

24

25       [3]  Again, Petitioner is entitled to the benefit of   Houston's mailbox rule to

26  determine the filing date of his federal habeas petition.   See supra text accompanying

27  note 2.

28       [4]  Although both R.K. Wong and Bill Lockyer were named as respondents, the
   Government moved to dismiss only on behalf of Respondent Wong.

tolling on the basis of any alleged mental illness. <u>Id.</u> at 5. Respondent maintains that Petitioner's condition is "being properly treated" and has not been shown to have had any impact on his ability to pursue federal habeas relief in a timely manner. <u>Id.</u> According to Respondent, Petitioner's lengthy delays in filing his habeas petitions demonstrate a lack of diligence, and as a result, no such tolling is warranted. <u>Id.</u> For all these reasons, Respondent requests that the petition be dismissed in its entirety. <u>Id.</u> at 6.

Petitioner has not opposed or otherwise responded to Respondent's motion.

<b><u>SCOPE OF REVIEW</u></b>

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2006).

<b><u>DISCUSSION</u></b>

**A.  Respondent Lockyer Should Be Dismissed As An Improper Respondent**

As an initial matter, the petition names R.K. Wong and Bill Lockyer as Respondents. Pet. at 1. Rule 2 of the Rules Governing § 2254 Cases provides that the state officer having custody of a habeas petitioner shall be named as respondent. Rule 2(a), 28 U.S.C. foll. § 2254. The structure of the California penal system places prisoners in the custody of both the Director of Corrections and the warden of the California prison where the petitioner is incarcerated. <u>See</u> <u>Ortiz-Sandoval v.</u>

7

_Gomez_, 81 F.3d 891, 895 (9th Cir. 1996) (noting that "the warden of a California prison and the Director of Corrections for California have the power to produce the prisoner," and emphasizing that the Advisory Committee Notes accompanying the Rules Governing § 2254 Cases contemplate directors as possible respondents).   Thus Wong, identified as acting warden of the prison where Petitioner is currently incarcerated, is a proper respondent, whereas Lockyer, the Attorney General of the State of California, is not.

The Attorney General failed to move to dismiss Repsondent Lockyer as an improper party.   Instead, the Attorney General opted to move to dismiss on behalf of Respondent Wong only.   Resp't Mem. at 3-6.   Because this Court finds that Lockyer was improperly named as a respondent, this Court **RECOMMENDS** that Respondent Lockyer be dismissed as an improper party.

**B.    The AEDPA's Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners.   28 U.S.C. § 2244(d) (West Supp. 2006).   Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court."   _Id._ § 2244(d)(1).   The one-year limitations period runs from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroac-

1   tively applicable to cases on collateral review; or

2   (D)  the date on which the factual predicate of the claim or
    claims presented could have been discovered through the
3   exercise of due diligence.

4   Id. § 2244(d)(1)(A)-(D).

5   Only section 2244(d)(1)(A) applies in this case.  As noted above,

6   Petitioner failed to file an opposition to Respondents' motion, and

7   therefore has made no explicit argument that any other provision of

8   section 2244(d)(1) applies.  Moreover, even construing the instant

9   petition liberally, this Court can identify neither suggestion nor

10  evidence that Petitioner's claims would be more properly evaluated under

11  any other subsection.  See Allen v. Calderon, 408 F.3d 1150, 1153 (9th

12  Cir. 2005) (instructing that courts must "construe pro se habeas filings

13  liberally").  Accordingly, subsection 2244(d)(1)(A) governs Petitioner's

14  habeas claims.

15  Again, subsection 2244(d)(1)(A) provides that the one-year

16  limitations period begins to run on the date on which the habeas

17  petitioner's conviction becomes final.  28 U.S.C. § 2244(d)(1)(A).

18  While section 2244(d)(1)(A) provides no definition of "final by the

19  conclusion of direct review," the Supreme Court has explained that

20  "final" means "a case in which a judgment of conviction has been

21  rendered, the availability of appeal exhausted, and the time for a

22  petition for certiorari elapsed or a petition for certiorari finally

23  denied."  Griffith v. Kentucky, 479 U.S. 314, 321 n.6 (1987) (citing

24  United States v. Johnson, 457 U.S. 537, 542 n.8 (1982)).  Where, as

25  here, no petition for review was filed in the California Supreme Court

26  following direct review in the state appellate court, the conviction

27  becomes final forty (40) days after the California Court of Appeal filed

28  its opinion.  See Smith v. Duncan, 297 F.3d 809, 813 (9th Cir. 2002)

1  (citing Cal. Rules of Court, rules 24(a), 28(b), 45(a); Cal. Civ. Proc.
2  Code § 12a).

3      In this case, the California Court of Appeal denied Petitioner's
4  direct appeal on May 15, 2002.  Lodgment 3.  Petitioner's conviction
5  therefore became final on June 24, 2002, or upon the expiration of the
6  allotted forty-day period in which Petitioner could have sought direct
7  review in the California Supreme Court.  <u>See</u> <u>Smith</u>, 297 F.3d at 813.
8  Thus, the statute of limitations period commenced on June 25, 2002, and
9  expired one year later on June 24, 2003.  Petitioner, however, delayed
10 filing his federal petition until August 11, 2006, more than three years
11 after the limitations period had expired.  Consequently, absent tolling,
12 the instant petition is untimely and barred by the statute of limita-
13 tions.

14    **C.**   <u>**Tolling**</u>

15        **1.**   <u>**Petitioner Is Not Entitled to Statutory Tolling**</u>

16     The AEDPA tolls its one-year limitations period for the "time
17 during which a properly filed application for State post-conviction or
18 other collateral review . . . is pending."[5]  28 U.S.C. § 2244(d)(2);
19 <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999).  The statute of
20 limitations is not tolled, however, "from the time a final decision is
21 issued on direct state appeal [to] the time the first state collateral

22 _____

23     [5]  In <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), the Supreme Court further instructed
    that the time an application for state post-conviction review is "pending" includes the
24     interval between the lower state court's adverse decision and the prisoner's filing of
25     a notice of appeal in the higher state court, provided that the filing of that notice
    is timely under state law.  <u>See</u> <u>Saffold</u>, 536 U.S. at 222-23; <u>see also</u> <u>Evans v. Chavis</u>,
26     546 U.S. 189, 126 S.Ct. 846, 852-53 (2006) (reiterating <u>Saffold</u>, and clarifying that
27     absent guidance from state courts, federal courts must independently examine the delay
28     in each case and determine what the state courts would have held with respect to
    timeliness).

06cv1669-BTM (BLM)

challenge is filed." <u>Nino</u>, 183 F.3d at 1006. Similarly, the limita-
tions period is not tolled after state post-conviction proceedings are
final and before federal habeas proceedings are initiated. <u>See</u> 28
U.S.C. § 2244(d)(2).

As set forth above, Petitioner first sought state collateral review
in the California Supreme Court on September 24, 2004. Lodgment 8.
Before that court ruled on this pending petition, however, Petitioner
filed a different habeas petition in the California Superior Court on
October 11, 2004. Lodgment 4. The California Superior Court denied
that petition on February 23, 2005. Lodgment 5. Petitioner then
pursued and was denied state habeas relief in the California Court of
Appeal. Lodgment 6-7. Finally, the California Supreme Court denied
Petitioner's initial petition for habeas review on August 17, 2005.
Lodgment 9. Accordingly, if the time period between September 24, 2004
and August 17, 2005 fell within the AEDPA's limitations period, it would
be tolled. 28 U.S.C. § 2244(d)(2). In this case, however, the statute
of limitations commenced on June 25, 2002 and expired on June 24, 2003,
long before Petitioner filed his first state habeas petition. As such,
Petitioner is not entitled to statutory tolling. Accordingly, unless
Petitioner establishes an entitlement to equitable tolling, the instant
petition is untimely.

    **2.** <u>**Petitioner Fails to Show Equitable Tolling Is Warranted**</u>

In the Ninth Circuit, the AEDPA's one-year statute of limitations
is subject to equitable tolling.[6] <u>See</u> <u>Roy v. Lampert</u>, 465 F.3d 964, 970

---

    [6] The Supreme Court has "never squarely addressed the question whether equitable
tolling is applicable to AEDPA's statute of limitations." <u>Pace v. DiGuglielmo</u>, 544
U.S. 408, 418 n.8 (2005) (assuming without deciding that equitable tolling applies to
the AEDPA's limitations period).

(9th Cir. 2006).   While equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.   "[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted). Petitioners face such a high bar in order to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." Guillory v. Rose, 329 F.3d 1015, 1018 (9th Cir. 2003) (citing Saffold, 536 U.S. at 226).   As a result, when assessing a habeas petitioner's argument in favor of equitable tolling, courts must conduct a "highly fact-dependent" inquiry.   Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002).

Petitioner did not oppose Respondent's motion to dismiss, and therefore has not formally addressed Respondent's arguments with regard to equitable tolling.   In the instant habeas petition, however, Petitioner explains that he is serving his sentence in the Enhanced Outpatient Program ("EOP"), that he "is currently under a level of care that requires close psychiatric monitoring and treatment," and that he has been prescribed "potent psychotropic drugs."[7]   Pet. at 8, 14.   In

---

[7]  As summarized above, Petitioner referenced his alleged mental illness in his initial state habeas petition, arguing that his condition prevented him from pursuing habeas relief in that court in a timely manner and therefore he was entitled to tolling.   See Lodgment 8 at 3-4.

support of these representations, Petitioner attaches prison mental health treatment plan records dated between November 2, 2005 and April 20, 2006, which describe the nature and extent of Petitioner's symptoms of depression and anxiety and confirm that he has been prescribed medication for same. <u>See</u> Pet. at Ex. A. Petitioner also cites Federal Rule of Civil Procedure 17(c)[8] and several Ninth Circuit cases touching on competency issues.  Pet. at 14 (citing <u>Allen</u>, 408 F.3d at 1152-54) (reversing dismissal for failure to prosecute and remanding for competency hearing where habeas petitioner presented sufficient evidence of incompetence, namely, two declarations attesting to petitioner's mental illness and inability to understand court orders and letter from prison psychiatrist stating petitioner was under psychiatrist's care, was diagnosed with chronic undifferentiated schizophrenia, and was taking two psychotropic medications); <u>Krain v. Smallwood</u>, 880 F.2d 1119, 1121 (9th Cir. 1989) (in a non-habeas civil case, reasoning that where "a substantial question exists regarding the mental competence of a party proceeding pro se," the preferred procedure is for courts to conduct a hearing to determine competence and if necessary, appoint a guardian ad litem)).  Finally, Petitioner indicates that he is unfamiliar with habeas proceedings and that his federal habeas petition

---

[8]  Federal Rule of Civil Procedure 17(c) provides

[w]henever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Fed. R. Civ. P. 17(c).

13

1  was prepared by another inmate.[9]  Id. at 8.

2      Respondent contends that equitable tolling is unwarranted in this

3  case.  Resp't Mem. at 5.  Claiming that Petitioner is receiving proper

4  treatment for his alleged mental illness, Respondent argues that

5  Petitioner has not established that his alleged condition has prevented

6  him from pursuing federal habeas relief in a timely manner.  Id.  In

7  Respondent's view, the lengthy delays between Petitioner's state and

8  federal habeas filings demonstrate nothing more that Petitioner's lack

9  of diligence.  Id.  Accordingly, Respondent insists that equitable

10  tolling is inappropriate.  Id.

11      A habeas petitioner's alleged mental incompetency may warrant

12  equitable tolling or require further development of the record because

13  mental incompetency is an extraordinary circumstance beyond a prisoner's

14  control.  See Allen, 408 F.3d at 1152-54 (finding substantial,

15  uncontradicted evidence of incompetence warranting a hearing where

16  inmate claimed to be incompetent, submitted sworn declarations from

17  himself and another inmate, and provided a letter from his prison

18  psychiatrist); Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003)

19  (expansion of record required where petitioner with history of mental

20  illness and possible incompetence provided medical records and stated

21  in a sworn pleading that he was incompetent in the years in which his

22  petitions should have been filed); Calderon v. United States Dist. Court

23  (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en banc), abrogated on other

24  grounds by Woodford v. Garceau, 538 U.S. 202 (2003) (noting that "[w]hen

25  a putative habeas petitioner's mental incompetency is at issue, and the

26  _____

27      [9]  Petitioner also represents that he will require the assistance of appointed

28  counsel after his "inmate legal assistant" (the inmate who Petitioner asserts prepared
the instant petition) is transferred from the EOP.  Pet. at 8.

1   record discloses a genuine basis for concern, it is appropriate to toll
2   the AEDPA's time bar until a reasonable period after the district court
3   makes a competency determination"). However, a showing of mental
4   illness alone will not toll the limitations period; mental illness tolls
5   the limitations period only where the prisoner's alleged mental illness
6   somehow made filing a timely habeas petition impossible. See Gaston v.
7   Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (equitable tolling will only
8   be granted if "'extraordinary circumstances' beyond a prisoner's control
9   make it impossible to file a petition on time") (citation omitted);
10  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (petitioner must
11  show that extraordinary circumstances were the cause of his untimeli-
12  ness); see also Johnson v. Evans, No. S-05-2460, 2007 WL 178014, at *4
13  (E.D. Cal. Jan. 19, 2007) (explaining that "mental illness will toll a
14  limitation period 'only if the illness in fact prevents the sufferer
15  from managing his affairs and thus from understanding his legal rights
16  and acting upon them'") (citation omitted). Again, the petitioner bears
17  the burden of showing an entitlement to equitable tolling. See Miranda,
18  292 F.3d at 1065.

19      The medical records attached to Petitioner's sworn federal habeas
20  petition document three mental health assessments conducted between
21  November 2, 2005 and April 20, 2006. See Pet. at Ex. A (attaching
22  mental health treatment plans dated November 2, 2005, January 26, 2006,
23  and April 20, 2006). During this period, prison psychiatrists described
24  Petitioner's appearance, behavior, speech, sleep, affect, cognition,
25  sensorium, insight, judgment, and attitude as within normal limits,[10]
26

27      [10]  While psychiatrists considered Petitioner's mood to be within normal limits
28  as of November 2, 2005, they described him as having a "depressed" mood on January 26,
    2006.  Pet. at Ex. A.

06cv1669-BTM (BLM)

and noted that Petitioner denied any hallucinations, delusions, suicidality, or "violence risk." Id. Notwithstanding these observations, psychiatrists consistently identified Petitioner's problems and/or symptoms as depression, anxiety, and panic attacks, and concluded that Petitioner suffered from mood disorder not otherwise specified ("NOS"). Id. To address Petitioner's symptoms, psychiatrists prescribed unspecified "psych" medications, recommended yard activity, and encouraged Petitioner's participation in therapy groups. Id.

Also before this Court are EOP records attached to Petitioner's sworn habeas petition filed in the California Supreme Court. See Lodgment 8 at Ex. G (attaching mental health progress notes dated from May 10, 2002 through July 30, 2002). These records detail Petitioner's mental state immediately prior to the date on which Petitioner's conviction was upheld on appeal to approximately one month into the AEDPA's limitations period. Id. During this two and one-half month period, staff summarized Petitioner's thought processes as ranging from slowed, "impaired insight," and "poor judgment" to concrete and goal directed, his mood as ranging from "okay," depressed, and dysphoric to "all right" and "much better," his affect as ranging from incongruent to appropriate for content and broad or smiling, and his behavior as consistently cooperative and open.[11] Id. Staff also noted that Petitioner regularly attended therapy groups, worked as a porter, and was a member of the prison baseball team. Id. By mid-to-late July 2002, staff assessments generally described Petitioner as in "good spirits" and smiling, and underlined his ability to recognize that

---

[11] Moreover, staff noted that Petitioner occasionally refused or discontinued his medications, was sometimes tearful, agitated, or easily stressed, and on one occasion, had thoughts of suicide. Lodgment 8 at Ex. G.

06cv1669-BTM (BLM)

1  "dwelling on past violence & prob[lem]s agitated him." Id. Over the

2  course of this entire period, however, staff regularly assessed

3  Petitioner as having major depressive disorder (recurrent, severe with

4  psychotic features), incongruent mood, polysubstance dependence, and a

5  Global Assessment of Functioning score of 45. Id. Staff also

6  consistently recommended that Petitioner continue to receive the same

7  level of mental health treatment. Id.

8      Based on its review of the records submitted, this Court is not

9  persuaded that Petitioner's alleged mental condition warrants either

10  equitable tolling or further inquiry regarding Petitioner's competency.

11  As an initial matter, this Court acknowledges that the mental health

12  records submitted show a history of depression, anxiety, and related

13  treatment. See Lodgment 8 at Ex. G. However, the records do not

14  support a finding, or even a legitimate concern, that Petitioner's

15  mental illness rendered him legally incompetent. Id. The records also

16  do not demonstrate that mental illness or any other disability prevented

17  Petitioner from filing a habeas petition before the limitations period

18  (June 25, 2002-June 24, 2003) expired.[12] See Gaston, 417 F.3d at 1034;

19  Spitsyn, 345 F.3d at 799. Instead, the records confirm that on July 24,

20  2002—thirty days into the AEDPA limitations period—Petitioner attempted

21  to seek review of his conviction in the California Supreme Court. See

22  Lodgment 8 at 3 (Petitioner explaining that he attempted to seek review

23  in the California Supreme Court on July 24, 2002); id. at Ex. E (prison

24  legal mail log confirming correspondence forwarded to California Supreme

25

26      [12] Further, the records attached to the instant petition do little to support

27  a claim for equitable tolling because they summarize Petitioner's mental health and

28  treatment related thereto between November 2, 2005 and April 20, 2006, i.e., long after

the AEDPA limitations period expired.

1   Court on that date).   The records further confirm that Petitioner

2   monitored the status of his filings throughout the limitations period

3   by sending periodic correspondence to his appellate counsel and seeking

4   assistance from his "jailhouse lawyer" when many months had passed

5   without a court ruling.  See Lodgment 8 at 3 (Petitioner explaining that

6   he "waited approximately eleven months for a response" to his petition

7   for review in the California Supreme Court and alerted his jailhouse

8   lawyer to the delay at that time); id. at Exs. B-F (attaching letter

9   responses from appellate counsel and the clerk of court and prison legal

10  mail logs confirming correspondence sent by Petitioner to various

11  courts, all dated during the relevant period).   Finally, the records

12  confirm that despite his condition immediately prior to and approxi-

13  mately one month into the AEDPA's limitations period (May 10, 2002-July

14  30, 2002), Petitioner was able to maintain employment as a porter,

15  voiced an increased understanding about how to cope with environmental

16  stressors, and regularly participated in therapy groups.  Lodgment 8 at

17  Ex. G.   Given this record, this Court finds that the fact that

18  Petitioner suffered from and was treated for mental illness at the

19  beginning of and more than two years after the expiration of the

20  limitations period is not sufficient to show that he was mentally

21  incompetent or that mental illness rendered him unable to pursue his

22  legal rights over the course of the entire limitations period.[13]   See

23  Gaston, 417 F.3d at 1034; Spitsyn, 345 F.3d at 799; see also Johnson,

24  2007 WL 178014, at *4 (explaining that "mental illness will toll a

25  limitation period 'only if the illness in fact prevents the sufferer

26

27      [13] The records from Petitioner's direct appeal do not contain any indication that

28  there was a concern regarding Petitioner's competence during the trial and pre-trial

    proceedings.  See Lodgments 1-3.

from managing his affairs and thus from understanding his legal rights and acting upon them'") (citation omitted).

Moreover, even assuming Petitioner's condition in mid-2002 prevented him from pursuing federal habeas relief in a timely manner, equitable tolling for the period supported by the medical record evidence would not render the instant petition timely.  In particular, the records documenting treatment received before and during the limitations period, dated May 10, 2002 through July 30, 2002, poten-tially would support equitable tolling for a mere thirty-six days of that period (June 25, 2002-July 30, 2002).  Here, Petitioner delayed filing his federal habeas petition until August 11, 2006.  As such, even if this Court were to provide equitable tolling for those thirty-six days, the instant petition is still untimely.

In sum, Petitioner sets forth no evidence showing that mental illness or other disability prevented him from filing a federal habeas petition on time.  See Gaston, 417 F.3d at 1034; Spitsyn, 345 F.3d at 799; see also Johnson, 2007 WL 178014, at *4.  While Petitioner submits mental health records exhibiting a history of mental illness and related treatment, he fails to explain how his mental illness rendered him incapable of timely filing.  Id.  Moreover, Petitioner has provided limited record evidence of mental health treatment during the relevant period, and has provided neither declarations nor affidavits signed by treating psychiatrists that might support a claim that his mental illness prevented him from filing in a timely manner.  Compare Allen, 408 F.3d at 1152-53 (evidence of incompetence included letter from prison psychiatrist stating petitioner was under psychiatrist's care, was diagnosed with chronic undifferentiated schizophrenia, and was taking two psychotropic medications).  As such, this Court has

thoroughly reviewed the mental health records submitted and finds that they fail to compel the conclusion that equitable tolling should be applied and to raise a substantial question regarding Petitioner's competency. Accordingly, this Court finds that equitable tolling is not warranted in this case.[14]

For the foregoing reasons, this Court finds that the instant petition was filed well after the statute of limitations expired, and that there exists no basis for tolling. As a result, this Court finds that the claims presented in the instant petition are barred by the AEDPA's one-year statute of limitations, and therefore **RECOMMENDS** that Respondents' Motion to Dismiss be **GRANTED**. Doc. No. 12.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondents' Motion to Dismiss; and (3) dismissing this action in its entirety with prejudice.

**IT IS ORDERED** that no later than **May 29, 2007**, any party to this action may file written objections with the Court and serve a copy on

---

[14] Moreover, to the extent that Petitioner attempts to argue that his unfamiliarity with habeas proceedings justifies equitable tolling, the argument is without merit. Pet. at 8. It is well settled that a habeas petitioner's status as an inmate, lack of legal knowledge, and lack of legal assistance do not constitute cause to excuse an untimely filing. See Johnson v. United States, 544 U.S. 295, 311 (2005) ("[W]e have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (explaining that a "pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (noting that "ignorance of the law, even for an incarcerated *pro se* prisoner, generally does not excuse prompt filing").

all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 19, 2007**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).


Dated: May 7, 2007


                                        BARBARA L. MAJOR
                                        United States Magistrate Judge

COPY TO:

HONORABLE BARRY TED MOSKOWITZ
UNITED STATES DISTRICT JUDGE


ALL COUNSEL

21

06cv1669-BTM (BLM)